IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| DIANNE MOREFIELD, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOTEWORLD, LLC d/b/a NOTEWORLD SERVICING CENTER,<br><br>Defendant. | ) | Civil Action No. 1:10-cv-00117 |

**DEFENDANT'S MOTION TO DISMISS BASED ON JUDICIAL ESTOPPEL, WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant NoteWorld LLC d/b/a NoteWorld Servicing Center ("NoteWorld") moves to dismiss the Complaint filed by Plaintiff Dianne Morefield, on the ground that her claims are barred by the doctrine of judicial estoppel.

## I. INTRODUCTION

The doctrine of judicial estoppel consistently has been applied in the bankruptcy context notwithstanding its often harsh consequences. In this case, judicial estoppel is particularly appropriate, because Ms. Morefield (a) failed to disclose her alleged claims against NoteWorld to the Bankruptcy Court of this District and her creditors until months after confirmation of her bankruptcy plan; and (b) continues to fail to disclose her settlement of a closely-related claim, even though that settlement calls for significant payments to her and her lawyers. Ms. Morefield's own pleadings in this case and in related cases establish that her claims against NoteWorld are barred by the doctrine of judicial estoppel.

In this case, Ms. Morefield purports to represent a putative class of Georgia consumers who participated in debt adjustment programs, based on her participation in such a program from November 2008 to June 2009. Notwithstanding the fact that Ms. Morefield's claims against NoteWorld in the instant action would have accrued by June 2009, she failed to disclose any such claims to this Court when she filed for bankruptcy on July 27, 2009. She also failed to disclose to this Court her related claims against Solve Debts, Inc. ("Solve Debts"), the entity that actually administered her debt adjustment program. Yet, only a few weeks after filing for bankruptcy, Ms. Morefield commenced a separate putative class action against Solve Debts. Again, Ms. Morefield remained silent, refraining from disclosing the lawsuit until after her bankruptcy plan had been confirmed.

Ultimately, it was not until October 8, 2009, ***two weeks after her bankruptcy plan had been confirmed*** (and six weeks after she filed her putative class action against Solve Debts), that Ms. Morefield finally amended her bankruptcy schedules to disclose a "cause of action" against Solve Debts. Even this disclosure did not provide a case number or similar identifying information for the class action she already had filed against Solve Debts. And, even though any claim Ms. Morefield may have had against NoteWorld would have arisen at the same time as her claim against Solve Debts, she continued to conceal that claim, only belatedly disclosing a "potential cause of action" against NoteWorld on March 15, 2010.

To this day, Ms. Morefield still has not informed her creditors that her "potential cause of action" against NoteWorld has ripened into this full-fledged class action lawsuit, nor that she reached a settlement of the Solve Debts lawsuit pursuant to which she may receive up to $2,500 and her lawyers may receive as much as $20,000. Instead, she has quit making her minimum bankruptcy payments, prompting the Trustee to move to dismiss her case.

For all of these reasons, Ms. Morefield should be judicially estopped from asserting her claims against NoteWorld now, and her complaint should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

In addition to this case, two other actions involving Ms. Morefield currently are pending: (1) Ms. Morefield's personal bankruptcy, which was filed on July 27, 2009, and confirmed on September 22, 2009; and (2) a separate putative class action Ms. Morefield filed against Solve Debts on August 26, 2009, prior to confirmation of her bankruptcy plan.

In support of this motion, NoteWorld attaches several pleadings from Ms. Morefield's bankruptcy action (S.D. Ga. Bank. Pet. 09-11778-SDB), which remains pending before the Bankruptcy Court.[1] NoteWorld also attaches the Complaint from Ms. Morefield's putative class action against Solve Debts, which was removed to this Court (No. 1:09-cv-00113-JRH-WLB) but then was remanded by consent of the parties.[2] As the Court immediately will appreciate from a comparison of the complaints, Ms. Morefield's Complaint against

---

[1] As filings in this Court, these materials properly are the subject of judicial notice. *See, e.g.*, Fed. R. Evid. 201; *Horne v. Potter*, No. 10-10561, 2010 WL 3245149, at *2 (11th Cir. Aug. 16, 2010) (finding district court properly took judicial notice of pleadings filed by plaintiff in separate action) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)); *see also Murray v. Chatman*, No. CV 109-133, 2009 WL 5125350, at *2 n.3 (S.D. Ga. Dec. 28, 2009) ("A court may take judicial notice of its own records and the records of inferior courts.") (quoting *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987)).

[2] The Solve Debts Notice of Removal incorrectly asserted that the claims of the class members could be aggregated for purposes of meeting the $75,000 threshold for individual diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Exhibit A; *see also Morefield v. Solve Debts*, No. CV 109-133, Order [granting consent remand], at 2 (S.D. Ga. filed Oct. 16, 2009) (copy attached as Exhibit B) (specifically noting that Solve Debts' Notice of Removal did not "assert jurisdiction pursuant to the Class Action Fairness Act"). NoteWorld's Notice of Removal, in contrast, relies upon (a) the Class Action Fairness Act, pursuant to which class claims aggregating more than $5,000,000 can be removed under 28 U.S.C. §§ 1332(d) and 1453; and (b) bankruptcy-based removal jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1452. It is not clear whether Solve Debts knew about Ms. Morefield's bankruptcy (and thus could have invoked the bankruptcy removal grounds) when it attempted to remove in 2009.

NoteWorld largely replicates her Complaint against Solve Debts, and, for the most part, merely substitutes "NoteWorld" for "Solve Debts" with respect to the circumstances allegedly giving rise to her claims.

**A. Ms. Morefield's Debt Adjustment Program**

In November of 2008, Ms. Morefield contracted with Solve Debts to, among other things, analyze her financial situation and negotiate with her creditors to lower her interest rates and principal amounts owed. *See Morefield v. Solve Debts*, Compl. ¶¶ 12-14.[3] At approximately the same time, Ms. Morefield also contracted with NoteWorld, an entity whom she alleges provides "transaction management and processing services" in connection with consumer debt adjustment programs (such as her debt adjustment program with Solve Debts). *See NoteWorld* Compl. (Dkt. No. 1) ¶¶ 24-25.[4]

Ms. Morefield alleges she participated in her Solve Debts debt adjustment program for seven months, or until June of 2009. *Solve Debts* Compl. ¶ 14; *NoteWorld* Compl. ¶ 27. Ms. Morefield also alleges that, during this time, she contributed "$1,985.27" to her debt adjustment program, of which "$1,259.75" purportedly was claimed by Solve Debts to constitute "its 'fee' for the proposed [debt adjustment] services." *Id.*; *see also NoteWorld* Compl. ¶¶ 27-28 (restating these allegations but naming NoteWorld rather than Solve Debts as the entity allegedly claiming the fee for debt adjustment services).

---

[3] The Notice of Removal in Ms. Morefield's action against Solve Debts, to which the state court complaint is attached, is attached hereto as Exhibit A.

[4] To differentiate Ms. Morefield's complaint against Solve Debts from her complaint in this action, the complaint in *Solve Debts* will be referred to as the "*Solve Debts* Complaint" whereas the complaint in this action will be referred to as the "*NoteWorld* Complaint."

**B. Ms. Morefield Files a Chapter 13 Bankruptcy Petition in July 2009**

On July 27, 2009 – over a month after her participation in the debt adjustment program had ceased, such that any "claims" she allegedly may have against Solve Debts and NoteWorld would have accrued – Ms. Morefield filed a voluntary petition under Chapter 13 in the Bankruptcy Court. *See In re Morefield*, Pet. 09-11778-SDB (Bankr. S.D. Ga.) ("*Morefield* Bankr.") Dkt. No. 1 (copy attached as Ex. C).

Even though Ms. Morefield was represented in her bankruptcy by counsel (the same attorney currently serving as co-counsel for Ms. Morefield in both the *Solve Debts* case and this action), she did not disclose any claims against Solve Debts or NoteWorld in her original bankruptcy petition. *See id.* To the contrary, when asked to identify all "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Ms. Morefield stated "***None***." *Id.* at 8 (emphasis added).

Citifinancial Auto Corporation objected to Ms. Morefield's proposed bankruptcy plan. *See Morefield* Bankr. Dkt. No. 21.[5] At the confirmation hearing on September 21, 2009, her obligation to Citifinancial Auto Corporation was adjusted. *See id.* Dkt. No. 29. The next day, September 22, 2009, Ms. Morefield's bankruptcy plan was confirmed. *Id.* Dkt. No. 30.

**C. Ms. Morefield's Pre-Confirmation Filing of Her Lawsuit Against Solve Debts**

On August 26, 2009 – the same day as the meeting of Ms. Morefield's bankruptcy creditors (*see Morefield* Bankr. Dkt. No. 19), and nearly a month before her bankruptcy plan was confirmed – Ms. Morefield filed the *Solve Debts* litigation in the Superior Court of Richmond County. *See Solve Debts* Compl. Despite the fact that her lawsuit sought

---

[5] The docket from Ms. Morefield's personal bankruptcy is attached hereto as Exhibit D.

significant relief on the part of a Georgia class comprised of all consumers who had entered debt adjustment contracts with Solve Debts, Ms. Morefield did not amend her Bankruptcy Petition to disclose the *Solve Debts* action at this time. *See Morefield* Bankr. Dkt. (Ex. D).

As noted above, Ms. Morefield's bankruptcy plan – calling for her to pay $800.00 a month for at least 36 months – was confirmed on September 22, 2009, prior to any disclosure of her claims against Solve Debts or NoteWorld. *Morefield* Bankr. Dkt. No. 30. It was not until October 8, 2009 – six weeks after Ms. Morefield filed the *Solve Debts* lawsuit, and two weeks after confirmation of her bankruptcy plan – that Ms. Morefield finally disclosed her claims against Solve Debts to this Court and her creditors. *See Morefield* Bankr. Dkt. No. 34. This disclosure did not identify the pending litigation brought by Ms. Morefield by name or number, however, but instead stated only that she had a "cause of action against Solve Debts, Inc." of "unknown" value. *Id.* at 3. Nor did it identify any claim or potential claim against NoteWorld, even though any such claim would have accrued at the same time as any purported claim against Solve Debts. *See id.*

On March 15, 2010 – nearly six months after confirmation of her bankruptcy plan and five months after she disclosed her cause of action against Solve Debts – Ms. Morefield, for the first time, identified a "potential cause of action against NoteWorld LLC." *See Morefield* Bankr. Dkt. No. No. 42, at 3. Notably, Ms. Morefield only made this disclosure as she was on the verge of settling the class claims against Solve Debts – a settlement Ms. Morefield still has not disclosed to her creditors in the bankruptcy action, much less had formally approved by the Trustee in her bankruptcy. And, as of the date of this motion, Ms. Morefield still has not amended her NoteWorld "disclosure" to identify the actual lawsuit she has now filed against NoteWorld, even though this lawsuit originally was filed July 28, 2010.

According to the "Notice of Class Action, Proposed Settlement" filed in the *Solve Debts* class action by Ms. Morefield, Ms. Morefield's lawyers in the *Solve Debts* action (and in this case) are to receive $20,000, while Ms. Morefield is to receive a separate "Incentive Award" of $2,500. *See Solve Debts* Action, Order [approving Notice of Class Settlement] (copy attached as Exhibit E), Ex. A thereto, at 2-4 (Ga. Super. Ct., Richmond Cty. Apr. 27, 2010). Both of these awards directly would benefit Ms. Morefield, and likely would be of significant interest to her creditors and the Trustee. Yet, as of the date of this motion, Ms. Morefield has not disclosed or sought formal approval of this settlement. *See* Ex. D.

**D. Ms. Morefield Files This Lawsuit Against NoteWorld**

Ms. Morefield filed her Complaint against NoteWorld on July 28, 2010, essentially re-casting the allegations from her Solve Debts complaint. *See* Compl. Despite having settled her claims with Solve Debts, Ms. Morefield now makes essentially the same claims against NoteWorld. *Compare id. with Solve Debts* Compl. For instance, Ms. Morefield now alleges that ***NoteWorld*** (rather than Solve Debts) "is in the business of providing 'Debt Adjustment' services to Georgia consumers" (an allegation NoteWorld vigorously denies). *See NoteWorld* Compl. ¶ 6. The only new allegations appear to be conclusory assertions by Ms. Morefield that NoteWorld "acted jointly" with Solve Debts or otherwise constitutes a "co-conspirator" with Solve Debts. *See id.* ¶¶ 12, 16, and 19.

Ms. Morefield would have been aware of these purported claims at the time she filed her bankruptcy on July 27, 2009; at the time she filed her complaint against Solve Debts on August 26, 2009; and at the time her bankruptcy plan was confirmed on September 22, 2009. Yet she did not disclose even a "potential cause of action" against NoteWorld until March 15, 2010, nearly six months after her bankruptcy plan was confirmed on September 22, 2009,

and still has not disclosed her filing of this lawsuit. In these circumstances, Ms. Morefield should be judicially estopped from prosecuting the claims against NoteWorld.

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. Standard of Review

A complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief. *See Mann v. Geren*, No. CV406-267, 2007 WL 2595299, at *1 (S.D. Ga. Sept. 5, 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)). "A complaint may be dismissed for failure to state a claim 'when its allegations . . . show that an affirmative defense bars recovery on the claim." *Horne v. Potter*, No. 10-10561, 2010 WL 3245149, at *1 (11th Cir. Aug. 16, 2010) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*)). The Court can take judicial notice of pleadings by the plaintiff in a separate action without converting a motion to dismiss into a motion for summary judgment. *See supra* n.1.

### B. Judicial Estoppel and its Application in the Bankruptcy Context

"The purpose of judicial estoppel is 'to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.'" *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814 (2001)). "Specifically, judicial estoppel is designed to 'prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous proceeding.'" *Id.* (citation omitted). "[It] is an equitable concept intended to prevent the perversion of the judicial process." *Ajaka v. BrooksAmerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).

Two factors generally are considered in determining whether to apply the doctrine. *Robinson*, 595 F.3d at 1273 (citing *Burnes*, 291 F.3d at 1285). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* (quoting *Burnes*, 291 F.3d at 1285).

The second factor essentially examines whether the plaintiff "had the requisite intent for judicial estoppel to apply." *In re Tyson Foods, Inc.*, Nos. 4:07-MD-1854 (CDL), 1:07-CV-93 (CDL), 2010 WL 3075315, at *7 (M.D. Ga. Aug. 5, 2010). "Intent" is not simple error or inadvertence, but rather intentional contradiction. *Robinson*, 595 F.3d at 1275 (quoting *Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983)). Nevertheless, "intent may be inferred from the record." *Id.* (citing *Burnes*, 291 F.3d at 1285). Furthermore, intent to conceal a claim is sufficient even where there has not been "any actual fraudulent result." *Id.* at 1275.

In the bankruptcy context, judicial estoppel has been applied "consistently," despite its "often harsh consequences." *In re Tyson Foods*, 2010 WL 3075315, at *9. It arises because "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." *Burnes*, 291 F.3d at 1286 (citing 11 U.S.C. §§ 521(1) and 541(a)(7)). "Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system." *Id.* (citation omitted).

In bankruptcy cases, "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." *Id.* (citation omitted). Moreover, such amendments must be concurrent with the change in circumstances. *See In re Tyson Foods*, 2010 WL

3075315, at *9. Once a debtor has intentionally failed to disclose property, "[i]t does not matter if the non-disclosing party later attempts to correct the failure to disclose." *See id.*

In bankruptcy-based judicial estoppel, intent will be found lacking "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Robinson*, 595 F.3d at 1275 (quoting *Barger v. City of Cartersville*, 348 F.3d 1289, 1295-96 (11th Cir. 2003)). In the Chapter 13 context, "[a] financial motive to secret[e] assets exists[,] . . . because the hiding of assets affects the amount to be discounted and repaid." *In re Tyson Foods*, 2010 WL 3075315, at *7 (quoting *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003)). Furthermore, "[d]ebtors could take a wait-and-see approach to disclosure by prosecuting an undisclosed claim while waiting to see how favorably the bankruptcy proceeding unfolds before discharge." *Williams v. Hainje*, No. 09-3772, 2010 WL 1936269, at *2 (7th Cir. May 14, 2010).

In *Robinson*, for example, the plaintiff was participating in her Chapter 13 bankruptcy plan when she filed an employment discrimination claim against her former employer. 595 F.3d at 1272. During depositions in the discrimination action, the employer learned that the plaintiff had not disclosed her suit against it to the bankruptcy court. *Id.* In fact, when asked on her bankruptcy schedules whether she had any suits or administrative proceedings pending, the plaintiff checked "NONE." *Id.* at 1273.

Due to the plaintiff's failure to disclose, the employer moved for summary judgment on the basis of judicial estoppel. *Id.* The district court granted the motion, and the Eleventh Circuit affirmed. *Id.* at 1277. The Eleventh Circuit found that the plaintiff had a sworn duty to disclose her claims against her employer to the bankruptcy court (*id.* at 1274); that the plaintiff took inconsistent positions by "represent[ing] that she had no legal claims to the

bankruptcy court while simultaneously pursuing her legal claim against [her former employer]" (*id.* at 1275); and that the plaintiff "had a motive to conceal her claim because if she realized any proceeds from the suit prior to the discharge of the bankruptcy[,] she could have kept the proceeds for herself without their becoming part of the bankruptcy estate and going to her creditors to satisfy her debts" (*id.*). Based on the foregoing, the court concluded that the district court properly "inferred the requisite intent to make a mockery of the judicial system from the record." *Id.* at 1276. Therefore, the court affirmed the district court's grant of summary judgment against the debtor plaintiff based on judicial estoppel. *Id.* at 1277.

A similar result was obtained in *De Leon.* In that case, a Chapter 13 debtor did not seek to amend his bankruptcy documents to add his discrimination claim against his former employer until after the employer challenged the plaintiff's omission of the claim from his bankruptcy documents. *De Leon*, 321 F.3d at 1291. The Eleventh Circuit found that, "[b]ecause [the plaintiff] certainly knew about his claim and possessed a motive to conceal it[,] because his amount of repayment would be less, we can infer from the record his intent 'to make a mockery of the judicial system.'" *Id.* at 1292 (quoting *Burnes*, 291 F.3d at 1285-87). Accordingly, the court affirmed the grant of summary judgment to the employer on the basis of judicial estoppel. *Id.*

Numerous other cases likewise have applied judicial estoppel to non-disclosing debtors such as Ms. Morefield. *See, e.g., In re Tyson Foods*, 2010 WL 3075315, at *10 (applying judicial estoppel where the debtors "never disclosed their claims to the bankruptcy court and thus potentially defrauded the bankruptcy court"); *Williams v. Hainje*, 2010 WL 1936269, at *2 (affirming application of judicial estoppel where debtor failed to disclose civil rights suit because suit necessarily "was on his mind as he prepared [his bankruptcy]

disclosures"); *Barger*, 348 F.3d at 1296 (affirming application of judicial estoppel where plaintiff "appeared to gain an advantage when she failed to list her discrimination claims on her schedule of assets"); *Burnes*, 291 F.3d at 1286-88 (affirming application of judicial estoppel where plaintiff pursued his employment discrimination claims during pendency of his Chapter 13 case but did not amend his bankruptcy schedules to include the lawsuit).

### C. Ms. Morefield Should be Judicially Estopped from Asserting Her Claims against NoteWorld in this Action

Both factors considered in determining whether to apply judicial estoppel weigh heavily in favor of applying the doctrine to bar Ms. Morefield's claims against NoteWorld. *See Robinson*, 595 F.3d at 1273 (citing *Burnes*, 291 F.3d at 1285).

First, Ms. Morefield took inconsistent positions under oath with respect to her claims against NoteWorld. As with the plaintiff in *Robinson*, Ms. Morefield wrote "None" when asked to identify all "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." *See Robinson*, 595 F.3d at 1273. Furthermore, as with the plaintiff in *De Leon*, Ms. Morefield did not amend her schedules to disclose any claim until after her bankruptcy plan had been confirmed – indeed, to this day, she still has not identified either of her lawsuits with specificity – thereby making a mockery of the judicial system. *See De Leon*, 321 F.3d at 1291.

Any claims Ms. Morefield may have had against NoteWorld accrued no later than June of 2009, when Ms. Morefield ceased participating in her debt adjustment plan with Solve Debts. In fact, when Ms. Morefield actually filed suit against Solve Debts in August of 2009, she expressly acknowledged the payments she was challenging had been withdrawn by Solve Debts' alleged "agent" (presumably, NoteWorld). *Solve Debts* Compl. ¶ 14. Yet,

Ms. Morefield did not disclose her claims against NoteWorld (or against Solve Debts) to the bankruptcy court, the Trustee, or her creditors at this time.

Ms. Morefield did not disclose even a "cause of action" against Solve Debts to her creditors and the bankruptcy court until October 8, 2009, almost six weeks after she had actually commenced a major class action suit predicated on that "cause of action" and over two weeks after her bankruptcy plan had been confirmed. Even in that untimely disclosure, Ms. Morefield still did not disclose her claim against NoteWorld. Rather, Ms. Morefield waited until March 15, 2010, to disclose what she characterized as a "potential cause of action" against NoteWorld.

Second, as a matter of law, Ms. Morefield's judicial actions manifest the requisite intent to trigger application of judicial estoppel. Ms. Morefield indisputably knew about her claims against NoteWorld (and Solve Debts) when she filed her bankruptcy petition on July 27, 2009, over a month after any claims she may have had relative to her debt adjustment program had accrued. She has been represented at all times in her bankruptcy proceeding by counsel, who also serves as co-counsel in both of Ms. Morefield's class actions. Despite actually filing a lawsuit against Solve Debts on August 26, 2009, Ms. Morefield still failed to disclose the claim to her creditors and the Trustee, allowing her bankruptcy plan to be confirmed on September 22, 2009. It was only on October 8, 2009, after confirmation, that Ms. Morefield finally and belatedly amended her schedules to identify a "cause of action" against Solve Debts (even then continuing to fail to disclose her claim against NoteWorld).

Ms. Morefield only identified a "potential cause of action" against NoteWorld when she was on the verge of settling with Solve Debts – a settlement she still has not disclosed to the Trustee or her creditors, even though she stands to recover as much as $2,500 while her

attorneys pocket $20,000. *See Morefield v. Solve Debts*, Notice of Class Action, Proposed Settlement. Indeed, the Trustee and Ms. Morefield's creditors likely would be highly interested in this settlement, given that the Trustee recently moved to dismiss Ms. Morefield's bankruptcy due to her failure to make her $800.00 monthly payments. *See Morefield* Bankr., Dkt. No. 46 (copy attached as Exhibit F).

The chronology of undisputed events here strongly implies that Ms. Morefield, like the plaintiff in *Robinson*, fully intended to keep the benefits of the Solve Debts settlement for herself. *See* 595 F.3d at 1275. Accordingly, this Court should apply the doctrine of judicial estoppel in this case to bar Ms. Morefield's claims against NoteWorld.

## IV. CONCLUSION

For the foregoing reasons, Ms. Morefield's complaint against NoteWorld should be dismissed with prejudice, based on the doctrine of judicial estoppel.

Respectfully submitted this 14th day of September, 2010.

***Pro hac vice* to be submitted for:**

C. Allen Garrett Jr.
Georgia Bar No. 286335
Aaron J. Ross
Georgia Bar No. 461981
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
agarrett@kilpatrickstockton.com
aross@kilpatrickstockton.com

*s/ Laurel Payne Landon*
Laurel Payne Landon
Georgia Bar No. 718407
Joseph H. Huff
Georgia Bar No. 374935
KILPATRICK STOCKTON LLP
699 Broad Street, Suite 1400
Augusta, Georgia 30901-1453
Telephone: (706) 724-2622
Facsimile: (706) 722-0219
llandon@kilpatrickstockton.com
jhuff@kilpatrickstockton.com

*Attorneys for Defendant NoteWorld LLC d/b/a NoteWorld Servicing Center*

**CERTIFICATE OF SERVICE**

This is to certify that, on this date, I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following counsel of record:

David E. Hudson
Christopher A. Cosper
HULL BARRETT, PC
Post Office Box 1564
Augusta, Georgia 30903-1564

Angela McElroy-Magruder
CLAEYS McELROY-MAGRUDER & ASSOCIATES
512 Telfair Street
Augusta, Georgia 30901

This 14th day of September, 2010.

s/ Laurel Payne Landon
Laurel Payne Landon
Georgia Bar No. 718407

*Attorney for Defendant NoteWorld LLC*
*d/b/a NoteWorld Servicing Center*